**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| JESSICA HARDEN, KRISTIE PROWSE **Individually and on behalf of similarly situated current and former employees,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | No.: |
| | ) ) | **FLSA COLLECTIVE ACTION** |
| | ) ) | |
| SIMPLY ELITE IN HOME CARE, LLC and KIMBERLY FRANKLIN, **Individually,** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) ) | |

## COMPLAINT

Come now the Plaintiffs, Jessica Harden and Kristie Prowse, individually and on behalf of other similarly situated employees (hereinafter "Plaintiffs"), by and through counsel, and sue Defendants Simply Elite In Home Care, LLC ("Simply Elite") and Kimberly Franklin, individually, as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* and Tennessee common law. Plaintiffs bring this claim individually and as part of a collective action pursuant to 29 U.S.C. § 216(b).

2. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. Venue lies in the Eastern District of Tennessee pursuant to 28 U.S.C § 1391.

4.      Plaintiff Jessica Harden is a citizen and resident of Roane County, Tennessee. Ms. Harden was employed by Defendant and performed substantial work within this judicial district as part of her employment.

5.      Plaintiff Kristie Prowse is a citizen and resident of Cumberland County, Tennessee. Ms. Prose was employed by Defendant and performed substantial work within this judicial district as part of her employment.

6.      Defendant Simply Elite, is a limited liability company registered with the Tennessee Secretary of State.[1]  It conducts significant business in the state and has its principal place of business at 123 N. College Street, Lebanon, Tennessee 37087.

7.      Defendant Simply Elite is engaged in interstate commerce, is a commercial enterprise, and is a covered employers under the FLSA.

8.      Defendant Kimberly Franklin is the principal and manager of Defendant Simply Elite.  As it pertains to each Plaintiff and his or her employment, Defendant Kimberly Franklin dealt directly with each Plaintiff, was involved in the daily operations of Defendant Simply Elite as to each Plaintiff's work assignment, implemented the entity-Defendant's wage policies, and refuted multiple Plaintiffs' assertions that they were entitled to overtime compensation. Therefore, Defendant Kimberly Franklin is a covered employer under the FLSA.

9.      In addition to the Plaintiffs named herein, Defendants employ and have employed within the last three years numerous other similarly situated employees who are also covered employees under the FLSA.

---

[1] The Tennessee Secretary of State website indicates that Simply Elite is an inactive entity which was administratively dissolved on August 10, 2024. However, Simply Elite's own website is still active and, upon information and belief, Simply Elite remains in business to date. *See* SimplyEliteHC.com, https://simplyelitehc.com/ (last accessed 12/19/2024).

## FACTUAL BASIS

### Relationship with Clients

10.     Defendant Simply Elite is an in-home care provider.  Its business model consists of contracting with individuals who need in-home medical-related care (e.g., elder care, dementia care, care for chronic conditions, hospital discharge care, respite care, etc.) and providing those individuals with in-home caregivers.

11.     A necessary and foundational component of Defendants' business model is to recruit and retain personnel to fill its clients' vacancies or personnel needs.

12.     Per contracts with each client, the client (and/or the client's insurance company) reimburses Defendants a predetermined rate, plus certain expenses, for each hour Defendants' personnel work with the clients.

13.     Defendant Simply Elite advertises job openings on its website and through other media.  Applicants then follow traditional application processes, including submitting their résumés, being interviewed, etc.

### Facts common to each Plaintiff

14.     Each Plaintiff does work or has worked for Defendants as a home care provider or Area Supervisor.  They performed their duties at the homes of Defendants' clients.

15.     Plaintiffs had no prior relationship with any of Defendants' clients.

16.     All details about the jobs were made known to them by Defendants.

17.     Defendants established the workweek applicable to each of Plaintiff.

18.     Each Plaintiff's assignment's length was negotiated and set by Defendants and the client.  Plaintiffs were not free to adjust their work schedule without seeking Defendants' permission, leave the assignment without permission, or hire helpers.

19. Defendants scripted the timing, method, and manner in which they required Plaintiffs to submit their timesheets. In maintaining timesheets, Defendants instructed Plaintiffs not to report hours worked over forty in a given workweek.

20. Defendants instructed that these timesheets were to be homogenous, meaning that the hours reported for each day were identical, regardless of the actual hours worked. For example, even if a Plaintiff worked from 7:47 a.m. until 5:10 p.m., Defendant instructed that his or her timesheet would reflect hours worked from 8:00 a.m. until 5:00 p.m.

21. Defendants set each Plaintiff's hourly pay rate. All wages (excluding reimbursable expenses) were calculated by multiplying the Plaintiff's hourly rate by the number of hours worked in a single workweek.

22. Defendants did not pay the Plaintiffs on a salary basis or a fee basis.

23. Given that the job assignment details were set by Defendants and their clients and based on the method Defendants used to calculate the Plaintiffs' compensation, Plaintiffs could not increase their profits through their own initiative (e.g., by assisting more clients).

24. While on assignment for Defendants, which often spanned many weeks or months, Plaintiffs' work schedules and job responsibilities did not allow for other gainful employment; Plaintiffs were wholly economically dependent on Defendants.

25. Plaintiffs did not market themselves or hold themselves out to the general public as available for hire. Instead, Plaintiffs' income flowed directly from Defendants' ability to market their business and attract paying clients.

26. Plaintiffs did not provide the equipment, supplies, or materials required to perform their jobs.

27. Defendants required Plaintiffs to notify them of all absences, including sick days.

28. Defendants prescribed the manner of Plaintiffs' dress, required them to conform to a code of conduct, an employee handbook, and an attendance policy.

29.     Defendants never paid overtime wages for any hour over forty Plaintiffs worked in a workweek.

**<u>Facts specific to Jessica Harden</u>**

30.     Ms. Harden is a former Area Supervisor for Defendants. She worked for Defendants continuously from approximately May 2023 through May 2024.

31.     Defendants compensated Ms. Harden at a rate of $17.25 per hour.

32.     Ms. Harden regularly worked between 60 and 90 hours per week.

33.     Defendants refused to pay Ms. Harden overtime and did not permit her to report any hours worked beyond 40 hours in a given workweek.

34.     Defendants instructed that Ms. Harden's timesheets were to be homogenous, meaning that the hours reported for each day were identical, regardless of the actual hours worked. For example, if she worked from 7:42 a.m. until 5:18 p.m., Defendant instructed that his or her timesheet would reflect hours worked from 8:00 a.m. until 5:00 p.m.

35.     Additionally, Ms. Harden was made to perform some work as a home care provider when someone was needed to fill in for an absent home care provider. Ms. Harden was not paid at all for some hours worked in this capacity due to Defendant's practice of only paying home care providers for hours reimbursed by a given client's insurance, as opposed to hours actually worked.

36.     Ms. Harden is personally aware of other individuals who worked for the Defendants as home care providers and Area Supervisors, that Defendants subjected to the same policies and procedures as she, who worked far greater than forty hours per week, and to whom Defendants likewise did not pay the overtime premium.

**Facts specific to Kristie Prowse**

37.     Ms. Prowse is a former Area Supervisor for Defendants. She worked for Defendants continuously from approximately January 2022 through September 2024.

38.     Defendants compensated Ms. Prowse at a rate of $19.00 per hour.

39.     Ms. Prowse regularly worked between 50 and 90 hours per week.

40.     Defendants refused to pay Ms. Prowse overtime and did not permit her to report any hours worked beyond 40 hours in a given workweek.

41.     Defendants instructed that Ms. Prowse's timesheets were to be homogenous, meaning that the hours reported for each day were identical, regardless of the actual hours worked. For example, if she worked from 7:42 a.m. until 5:18 p.m., Defendant instructed that his or her timesheet would reflect hours worked from 8:00 a.m. until 5:00 p.m.

42.     Ms. Prowse is personally aware of other individuals who worked for the Defendants as home care providers and Area Supervisors, that Defendants subjected to the same policies and procedures as she, who worked far greater than forty hours per week, and to whom Defendants likewise did not pay the overtime premium.

## CAUSES OF ACTION

**Claim I - Fair Labor Standards Act:  Failure to pay overtime**

43.     Plaintiffs incorporate by reference the paragraphs above.

44.     Pursuant to the FLSA, employers must compensate their employees for overtime work "at a rate not less than one and one-half times the regular rate at which the employee is actually employed" after the first forty hours of work.  29 C.F.R. § 778.107.

45.     Defendants never paid Plaintiffs the overtime premium despite Defendants' knowledge or requirement that each of their home care providers worked substantially more than forty hours in a given week.

46.     In an intentional, willful, and concerted effort to avoid the costs of overtime wages and other mandated costs employers ordinarily absorb, Defendants used fraudulent accounting practices to manipulate Plaintiffs' working hours and obfuscate the payment of overtime.

47.     These employee-plaintiffs did not fall under the FLSA exception for companionship services because (1) more than twenty percent (20%) of Plaintiffs' work consisted of "care services" as defined by the Department of Labor; and, (2) that exception is only available to individual families or households who employ such a caregiver—it does not apply to third party employers of direct care workers, such as home care staffing agencies like the Defendants.[2]

**Claim II - Fair Labor Standards Act: Failure to Keep and Maintain Accurate Records**

48.     The FLSA places on employers the duty to maintain records showing employees' "[h]ours worked each workday and total hours worked each workweek," including timesheets. 29 U.S.C. § 211(c) (2021);  29 C.F.R. § 516.5(a) (2021);  29 C.F.R. § 516.2(7) (2021).

49.     Failing to keep such records is an independent violation of the FLSA.  29 U.S.C. § 215(a)(2) and (5) (2021).  *See also Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156 (10th Cir. 2018) (holding that plaintiff stated FLSA claim by alleging employer's failure to maintain records of hours worked).  *But see Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 844-45 (6th Cir. 2002) (finding only Department of Labor has standing to pursue standalone recordkeeping claim but private plaintiff may use violation as evidence in overtime claim).

50.     There are two significant penalties flowing from a recordkeeping violation:  First, the court may make a finding that the employer's violations were willful, which automatically triggers the three-year statute of limitations.  *See, e.g., Elwell*, 276 F.3d at 844-45.  Second and

---

[2] U.S. Department of Labor Fact Sheet # 79A: Companionship Services Under the Fair Labor Standards Act (2015), available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs79a.pdf

often critically, the violation lessens the employee's burden of proof as to the number of hours actually worked. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*.

51. In the absence of precise records, a court must accept the number of hours the employee proffers if supported by a "just and reasonable inference." *Anderson*, 328 U.S. at 687.

52. Homogenous time records – i.e., those reflecting identical work hours with no or few exceptions – are usually insufficient as a matter of law. 29 U.S.C. § 211(c) (2021); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946); *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 988-89 (W.D. Tenn. 2011). *See also U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995).

53. Here, Defendants' timesheets fall precisely under the category of inadequate records described above. Defendants instructed that Ms. Prowse's and Ms. Harden's timesheets were to be homogenous, meaning that the hours reported for each day were identical, regardless of the actual hours worked. For example, if she worked from 7:42 a.m. until 5:18 p.m., Defendant instructed that his or her timesheet would reflect hours worked from 8:00 a.m. until 5:00 p.m.

## Claim III - Unjust Enrichment

54. Plaintiffs and other similarly situated employees conferred substantial benefits on Defendants by performing home care supervision services on Defendants' behalf for which Defendants knowingly and willfully withheld the overtime premium that the law required Defendants to pay, and withheld other monetary benefits, such as taxes and insurance benefits.

55. To keep Plaintiffs working under this illegal arrangement, the individual Defendants acting as agents of the entity Defendants, willfully made misleading statements and representations they knew to be false.

56. Defendants were keenly aware that Plaintiffs and the other home care providers worked a substantial amount of inadequately and illegally uncompensated hours.

57. Defendants made and continue to make profits directly tied to the uncompensated work performed by Plaintiffs and their coworkers. Allowing Defendants to reap the benefit of their employees' labor without compensating them is manifestly unjust.

## DAMAGES

58. As a direct, proximate, and exclusive result of Defendants' willful violations of the FLSA and their unjust enrichment from Plaintiffs' under-compensated labor, Plaintiffs and similarly situated employees have experienced substantial monetary losses and damages, including lost wages, attorney fees, and costs.

## COLLECTIVE ACTION CLAIMS

59. Like Plaintiffs, there are numerous current and former home care providers and Area Supervisors who, within the last three years, worked as Defendants' employees and whom Defendants have willfully failed to pay overtime premium wages. These individuals performed the same duties of home care providers, were subject to the same time keeping and reporting policies, were told the same false information about why they were not entitled to overtime compensation, were not paid for hours over forty, were subject to the same travel procedures, reported directly to at least one of the Defendants, and worked far more than forty hours every workweek.

60. Each Plaintiff has given his or her consent to proceed collectively in this action, and such consent will be filed with the Court.

61. Plaintiffs are representatives of those current and former employees and are acting on behalf of the other employees' interests, as well as their own interests, in bringing this action.

62. Defendants can readily identify through its records those home care providers who within the last three years have performed work for or on behalf of Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jessica Harden and Kristie Prowse, individually and on behalf of similarly situated employees, pray for the following relief:

63. Authorization to issue a notice pursuant to 29 U.S.C. § 216(b) at the earliest possible time to all current and former employees who performed work for Defendants during the three (3) years immediately preceding the filing of this action, to inform them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit;

64. A judgment that Defendants have violated the overtime provisions of the FLSA as to Plaintiffs and those similarly situated persons who opt into this action;

65. A judgment that Defendant failed to maintain records showing employees' hours worked each workday and total hours worked each workweek in violation of 29 U.S.C. § 211(c).

66. A judgment that Defendants' violations of the FLSA were willful;

67. A judgment that Defendants were unjustly enriched by their failure to properly compensate Plaintiffs for hours worked over forty;

68. An award of damages in the amount of unpaid overtime compensation to be proven at trial;

69. An award of liquidated damages in an amount equal to the overtime compensation shown owed to Plaintiffs pursuant to 29 U.S.C. § 216(b);

70. An award of post-judgment interest;

71. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and,

72. An award of such other and further legal and equitable relief that may be appropriate under the facts of this case.

RESPECTFULLY SUBMITTED,

_s/ Clint J. Coleman_
CLINT J. COLEMAN (BPR #038413)
EAST TENNESSEE EMPLOYMENT LAW, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
clint@etnemploymentlaw.com

*Attorneys for Plaintiffs*